## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DEANNE BERREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-3426 |
| | ) | |
| THE TRAVELERS INDEMNITY | ) | |
| COMPANY OF AMERICA | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

On October 25, 2011, Plaintiff Deanne Berrey filed a Complaint in

the Sangamon County Circuit Court.  The two-count Complaint alleges

state law claims for breach of insurance contract (Count I) and violation

of the Illinois Insurance Code (Count II).  In November 2011,

Defendant, the Travelers Indemnity Company of America (Travelers),

removed the case to federal court.  The matter is now before the Court on

the cross motions for summary judgment filed by Travelers (d/e 9) and

Plaintiff (d/e 11).  Because Traveler's has fulfilled its obligations under

the insurance policy at issue, Traveler's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

<u>BACKGROUND</u>

On March 26, 2009, Plaintiff suffered injuries in an automobile accident that occurred while operating a vehicle within the scope of her employment with Curry Ice & Coal, Incorporated (Curry Ice & Coal). Sheri Campbell, the other driver, caused the accident.  Plaintiff made a claim for workers' compensation benefits and received $103,224.02 in benefits as follows: (1) $26,106.25 in temporary total disability benefit payments; (2) $51,535.27 for medical bills; and (3) $25,582.50 in permanent partial disability benefit payments.  Plaintiff also made a liability claim against Campbell, the at-fault driver of the vehicle that hit Plaintiff.  Campbell's policy had a $100,000 limit.  Finally, Plaintiff submitted a claim under the underinsured motorist (UIM) coverage of policy number P-810-932K4769-TIA-08 (Policy) that Travelers had issued to Curry Ice & Coal.

On July 26, 2011, a binding arbitration hearing took place pursuant

to an agreement between Plaintiff and Curry Ice & Coal.  Two days later
the arbitration panel issued its "Decision of Arbitration" that found "an
appropriate and just award to the Plaintiff for all elements of the
damages presented in this matter is the amount of $310,000.  This
amount is inclusive of all medical expenses that were incurred and paid."
In coming to this conclusion, the arbitration panel considered all of
Plaintiff's relevant medical records and a summary of her medical bills
incurred because of the accident.  The panel also considered Plaintiff's
scars, information from the crash report, photographs of the vehicles
involved in the accident, the information on Plaintiff's W-2 forms for
2007, 2008, and 2009, and a document summarizing Plaintiff's lost
income.

Plaintiff has received two checks from Travelers totaling $210,000
(one for $181,346.31 and a second for $28,653.69) and $103,223.02 in
workers' compensation benefits from the workers' compensation carrier.
Additionally, the other driver Campbell's liability insurer paid $100,000,
which was paid directly to the worker's compensation carrier to satisfy its

workers' compensation lien.

Plaintiff claims Travelers still owes her money pursuant to the UIM coverage of the Policy.  In Count I, Plaintiff seeks the $100,000 she claims Travelers still owes her pursuant to the UIM provision of the Policy.[1]  Count II seeks relief under the Illinois Insurance Code for Travelers' alleged wrongful and vexatious refusal to pay the amount due and owing Plaintiff under the Policy.

This case involves the interpretation of the Policy issued by Travelers to Curry Ice & Coal.  The Policy was in effect from August 1, 2008 through August 1, 2009 and covered vehicles owned by Curry Ice & Coal.  The Policy provides UIM coverage up to $1 million per accident.  The Policy also contains the following provisions relevant to Travelers' UIM exposure to Plaintiff:

A. COVERAGE

1.  We will pay all sums the "insured" is legally entitled to recover

---

[1] Count I of the Complaint actually requests $128,653.69.  Travelers issued Plaintiff a check in the amount of $28,653.69 on March 2, 2012, which was after Plaintiff filed her Complaint.  This later payment may account for why Plaintiff requests an order directing Travelers to only pay Plaintiff $100,000 (on Count I) should this Court grant Plaintiff's Motion for Summary Judgment.

as compensatory damages from the owner or driver of an "underinsured motor vehicle."

See d/e 9-1 at p. 36 (Exhibit D, p. 1)

. . .

D.  LIMIT OF INSURANCE . . .

2.  Except in the event of a "settlement agreement", the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:

a.  By or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

b.  Under any workers' compensation, disability benefits or similar law.  However, the Limit of Insurance for this coverage shall not be reduced by any sums paid or payable under Social Security disability benefits.

. . .

4.  No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage Form.

See d/e 9-1 at p. 37 (Exhibit D, p. 2).

Also, near the top of the first page of the UIM endorsement, the

Policy states:

Limit of Insurance: $ SEE CAT 030[2] Each "Accident"

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

<u>See</u> d/e 9-1 at p. 36 (Exhibit D, p. 1).  Form "CAT 030" (really CA TO 30 11 06 (d/e 9-1, p. 9; Exhibit A, p. 1) shows the Limit of Insurance for UIM coverage is $1,000,000 for each "accident."

The UIM provision also contains an arbitration provision that provides in pertinent part:

If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

<u>See</u> d/e 9-1 at p. 38-39 (Exhibit D, p. 3-4).

## JURISDICTION AND VENUE

---

[2] The form referenced here is presumably Form CA TO 30 11 06 (d/e 9-1 at p. 9 (Exhibit A, p. 1).  This form contains the coverage and limits of insurance for both uninsured and underinsured motorist coverage.

Plaintiff is a resident of Macoupin County, Illinois.  Travelers is a corporation based in Connecticut.  Because complete diversity exists, and the amount in controversy exceeds $75,000, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1).  Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred here.  See 28 U.S.C. § 1391(a)(2).

## STANDARD OF REVIEW

"Summary judgment is appropriate when the pleadings and submissions in the record indicate the absence of any genuine issues of material fact, such that the moving party is entitled to judgment as a matter of law."  Mercatus Group, LLC v. Lake Forest Hospital, 641 F.3d 834, 839 (7th Cir. 2011).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  The movant bears the burden of establishing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986).  If the movant meets this burden, the non-movant must set

forth specific facts demonstrating that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e); <u>Anderson</u>, 477 U.S. at 252.

In deciding a motion for summary judgment, a court can only

consider sworn statements based on personal knowledge and other

evidence that would be admissible at trial under the Federal Rules of

Evidence.  <u>Stinnett v. Iron Works Gym/Executive Health Spa, Inc.</u>, 301

F.3d 610, 613 (7th Cir. 2002).  The evidence is viewed in the light most

favorable to the non-movant, and "all justifiable inferences are to be

drawn in his favor."  <u>Anderson</u>, 477 U.S. at 255.

Summary judgment is inappropriate when alternate inferences can

be drawn from the evidence, as the choice between reasonable inferences

from facts is a jury function.  <u>Id.</u>; <u>Spiegla v. Hull</u>, 371 F.3d 928, 935 (7th

Cir. 2004).  However, conclusory allegations do not create issues of fact

which forestall summary judgment.  <u>See Sublett v. John Wiley & Sons,

Inc.</u>, 463 F.3d 731, 740 (7th Cir. 2006) (internal citation omitted) ("[I]t

is . . . axiomatic that a plaintiff's conclusory statements do not create an

issue of fact").

## ANALYSIS

"In a suit where the federal court's subject matter jurisdiction is based on diversity, such as this one, the forum state's choice of law rules determine the applicable substantive law." Sound of Music Co. v. Minnesota Min. & Mfg. Co., 477 F.3d 910, 915 (7th Cir. 2007). The Parties do not dispute that Illinois substantive law applies to this dispute.

Count I of the Complaint alleges breach of an insurance contract. "An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." Hobbs v. Hartford Ins. Co. of the Midwest, 214 Ill.2d 11, 17, 823 N.E.2d 561, 564 (2005). Therefore, the court's primary objective is to determine and give effect to the intent of the parties as expressed in the language of the policy. Id. "To determine 'the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations], with due regard to the risk undertaken, the subject matter that is insured and the purposes of

the entire contract [citations].'" <u>Lapham–Hickey Steel Corp. v.</u>

<u>Protection Mutual Insurance Co.</u>, 166 Ill.2d 520, 529, 655 N.E.2d 842

(1995), quoting <u>Outboard Marine Corp. v. Liberty Mutual Insurance</u>

<u>Co.</u>, 154 Ill.2d 90, 108, 607 N.E.2d 1204 (1992). If the terms in the

policy are clear and unambiguous, a court will give the language its plain

meaning unless the policy contravenes public policy.  <u>American States</u>

<u>Ins. Co. v. Koloms</u>, 177 Ill.2d 473, 479, 687 N.E 2d 72, 75 (1997);

<u>Hobbs</u>, 214 Ill.2d at 17, 823 N.E.2d at 564 .  However, if the terms in

the policy are ambiguous, they will be construed strictly against the

insurer as the drafter of the policy.  <u>American States Ins. Co.</u>, 177 Ill.2d

at 479, 687 N.E 2d at 75.  A policy is ambiguous if it is subject to more

than one reasonable interpretation.   <u>Hobbs</u>, 214 Ill.2d at 17, 823 N.E.2d

at 564.

"Although 'creative possibilities' may be suggested, only reasonable

interpretations will be considered.  Thus, [a court] will not strain to find

an ambiguity where none exists.  Although policy terms that limit an

insurer's liability will be liberally construed in favor of coverage, this rule

of construction only comes into play when the policy is ambiguous."
Hobbs, 214 Ill.2d at 17, 823 N.E.2d at 564 (citations omitted).

This case involves the interpretation of the Policy's UIM
endorsement.  The Illinois Insurance Code defines an underinsured
motor vehicle as follows:

> [T]he term "underinsured motor vehicle" means a motor
> vehicle whose ownership, maintenance or use has resulted in
> bodily injury or death of the insured, as defined in the policy,
> and for which the sum of the limits of liability under all
> bodily injury liability insurance policies or under bonds or
> other security required to be maintained under Illinois law
> applicable to the driver or to the person or organization
> legally responsible for such vehicle and applicable to the
> vehicle, is less than the limits for underinsured coverage
> provided the insured as defined in the policy at the time of
> the accident.  The limits of liability for an insurer providing
> underinsured motorist coverage shall be the limits of such
> coverage, less those amounts actually recovered under the
> applicable bodily injury insurance policies, bonds or other
> security maintained on the underinsured motor vehicle.

215 ILCS 5/143a-(2)(4).  The legislative purpose of underinsured
motorist coverage is to "'place the insured in the same position he would
have occupied if the tortfeasor had carried adequate insurance.'"  Phoenix
Insurance Co. v. Rosen, 242 Ill.2d 48, 57, 949 N.E.2d 639, 646 (2011),

quoting <u>Sulser v. Country Mutual Insurance Co.</u>, 147 Ill.2d 548, 555, 591 N.E.2d 427, 429 (1992).

Here, the Policy's definition of underinsured motor vehicle is substantially similar to the Illinois Insurance Code's definition of the term.  The Parties do not dispute that the tortfeasor Campbell was an underinsured motorist because the limit of Campbell's insurance was less than the limits for UIM coverage available to Plaintiff under the Policy. <u>See</u> d/e 9-1 Exhibit D, p. 4 (containing the Policy's definition of "underinsured motor vehicle"); <u>see also</u> 215 ILCS 5/143a-2(4) (containing statutory definition of "underinsured motor vehicle").  The Parties, however, dispute whether the terms of the Policy's UIM endorsement require Travelers to pay Plaintiff the $100,000 she seeks.

Plaintiff sets forth several reasons why she believes she is entitled to the $100,000:  (1) Travelers did not submit the issue of setoff to arbitration; (2) the Limit of Insurance in the UIM endorsement limits the amount of underinsurance available, not the payment due; and (3) Plaintiff did not "receive" any of the $100,000 from Campbell's liability

policy because it went directly to the workers' compensation carrier.

Plaintiff argues that "in order for Defendant to claim a setoff the issue had to be addressed in the Decision of Arbitration," citing Zimmerman v. Illinois Farmers Ins. Co., 317 Ill. App. 3d 360, 739 N.E.2d 990 (Ill. App. Ct. 2000), to support her argument.  In Zimmerman, the court held that where the arbitrator ordered "payment" of $149,233, the defendant could not unilaterally set off the plaintiff's recovery from that award.  Zimmerman, 317 Ill. App. 3d at 368, 739 N.E.2d at 996.

However, Zimmerman is distinguishable.  The outcome in Zimmerman hinged on the particular language of the arbitration provision.  That language is different from the language of the arbitration provision in this case.

The language of the arbitration provision at issue in Zimmerman stated as follows:

> The arbitrator shall determine (1) whether the Insured person
> is legally entitled to recover damages from the owner or
> operator of an uninsured motor vehicle, and (2) the amount
> of payment under this part, if any, as determined by this

policy or any other applicable policy the language of the arbitration provision.

Zimmerman, 317 Ill. App. 3d at 363, 739 N.E.2d at 993.  The arbitrator ordered the defendant to pay Zimmerman "the sum of ONE HUNDRED FORTY-NINE THOUSAND TWO HUNDRED THIRTY-THREE ($149,233.00) DOLLARS."  This Award was "in full settlement of all claims submitted to this arbitration."  Id.

On appeal, the defendant argued that the arbitrator was required to hear the evidence and determine the plaintiff's total damages. Additionally, the defendant argued that the plaintiff's total damages were "the amount due under this part that was subject to arbitration and that the arbitrator's decision was subject to setoff.  Zimmerman, 317 Ill. App. 3d at 366, 739 N.E.2d at 995.  The Zimmerman court disagreed with the defendant and in doing so distinguished the concepts of "damages" and "payment."  See Zimmerman, 317 Ill. App. 3d at 366, 739 N.E.2d at 995 (defining "damages" as "a pecuniary compensation that may be recovered in the courts by a person who has suffered loss, detriment, or injury" and "payment" as "the fulfillment of a promise or the performance of an

agreement").  The court stated that "although an insured may be entitled
to 'damages' from the tortfeasor as compensation for her or his injuries,
she or he is entitled to a 'payment' from her or his insurer in fulfillment
of the insurer's contractual obligation" to place the insured in the same
position that he or she would have been in had the underinsured motorist
carried liability insurance in the same amount as the policyholder.
Zimmerman, 317 Ill. App. 3d at 366-67, 739 N.E.2d at 995.  The court
acknowledged that "the amount of payment due under an insurance
contract cannot be determined without considering the amount of
damages", but the court noted that "this interrelationship does not
eliminate the distinction."  Zimmerman, 317 Ill. App. 3d at 367, 739
N.E.2d at 996.  The Zimmerman court determined that the plain
language of the arbitration provision required the arbitrator to determine
the amount of payment the defendant owed the plaintiff under the policy
and that the arbitrator's award clearly stated that the defendant was to
pay the plaintiff an exact amount.  Zimmerman, 317 Ill. App. 3d at 368,
739 N.E.2d at 996.  The court concluded "that the arbitrator's award

determined the precise issue committed to arbitration by the insurance contract, i.e., the amount defendant was required to pay plaintiff under the policy." Zimmerman, 317 Ill. App. 3d at 368, 739 N.E.2d at 996. Therefore, the defendant was not entitled to unilaterally set off the plaintiff''s recovery from the award. Zimmerman, 317 Ill. App. 3d at 368, 739 N.E.2d at 996.

However, the Seventh Circuit Court of Appeals distinguished Zimmerman in Mullaney v. St. Paul Fire & Marine Ins. Co., 184 Fed. Appx. 577 (7th Cir. 2006). Mullaney involved an arbitration provision that contained similar language to that present in this case. In Mullaney, the plaintiff was involved in an accident where the UIM provision of a policy provided by St. Paul Fire & Marine Insurance Company (St. Paul) had a $1,500,000 limit. Id. at 578. St. Paul paid the plaintiff the $250,000 limit of the at-fault driver's insurance policy in order to preserve its subrogation rights. Id. Later, an arbitration panel convened to determine the full extent of the plaintiff's damages and decided that figure was $1,500,000. St. Paul subtracted the $250,000 it had already

paid the plaintiff and gave the plaintiff an additional $1,250,000.  Id.

The plaintiff sued the St. Paul arguing it was obligated to pay the entire

$1,500,000.  St. Paul moved for and was granted summary judgment.

On appeal, the plaintiff relied on Zimmerman and argued that if the

defendant wished to apply the $250,000 as a setoff, the defendant

should have made that request to the arbitration panel.  Id.

The Seventh Circuit noted that the outcome in Zimmerman hinged

on the particular language of the arbitration clause that instructed the

arbitrator to determine the "payment" owed to the claimant.  Id.  The

Mullaney court also noted that in reaching its conclusion the

Zimmerman court distinguished "payment" from "damages" and broadly

construed "payment" to include the determination of any applicable

setoff.  Id.  Because the arbitration provision in Mullaney made no

mention of "payment", the court concluded that the arbitration panel

was only authorized to determine the amount of damages sustained by

the claimant.  Id.  Moreover, because the insurance policy in Mullaney

prohibited double payments by stating "[i]n no event will a protected

person be allowed to receive duplicate payments for the same loss," the court concluded that St. Paul was entitled to deduct the earlier payment from the arbitration panels's assessment of damages.  Id.

As in Mullaney, the arbitration clause in this case makes no mention of "payment."  Instead, it only authorizes the arbitration panel to determine whether the insured is legally entitled to recover damages from the owner or driver of an underinsured motor vehicle and the amount of damages that are recoverable by the insured.  Accordingly, Travelers was not required to submit the issue of setoff to the arbitration panel.  Moreover, the Policy in this case is similar to the policy in Mullaney in that the Policy also prohibits double recovery for the same element of loss ("No one will be entitled to receive duplicate payments for the same elements of 'loss' under this Coverage Form and any Liability Coverage Form").

Next, Plaintiff maintains that Travelers still owes her $100,000 because (1) the language of the UIM endorsement affects the Policy limit but does not allow workers' compensation benefits to be deducted from

the benefit due, and (2) Plaintiff never received the $100,000 from Campbell's liability insurer since the money went directly to pay off the workers' compensation lien and related legal expenses.

Plaintiff interprets Section D.2 of the UIM endorsement to mean that the Policy limit is affected by any workers' compensation benefits received while the amount of benefit due is not affected. Section D.2 of the UIM endorsement, states as follows: "Except in the event of a 'settlement agreement', the Limit of Insurance for this coverage shall be reduced by all sums paid or payable . . . [u]nder any workers' compensation, disability benefits or similar law." Under Plaintiff's interpretation, the amount of money she received in workers' compensation benefits would only reduce the $1,000,000 limit of UIM insurance available to her. According to Plaintiff, this language does not allow Travelers to set off the amount of workers' compensation benefits Plaintiff received. However, Section D.4 of the UIM Endorsement states that "[n]o one will be entitled to receive duplicate payments for the same elements of 'loss' under this Coverage Form and any Liability Coverage

Form."  When read together, Sections D.2 and D.4 of the UIM endorsement clearly are meant to allow a setoff of any amounts recovered in workers' compensation benefits by the insured and to prevent a double recovery by the insured.  In any event, even if the Court were to accept Plaintiff's interpretation of Section D.2, Section D.4 still prevents Plaintiff from receiving duplicate payments for the same element of loss.

To avoid Section D.4's ban on double recovery, Plaintiff only argues that she did not receive the $100,000 from Campbell's insurer.  Instead, the money went directly to pay the workers' compensation lien.  Plaintiff cites Roberts v. Northland Insurance Co., 291 Ill. App. 3d 727, 685 N.E.2d 371 (Ill. App. Ct. 1997), affirmed in part and reversed in part by Roberts v. Northland Insurance Co., 185 Ill.2d 262, 705 N.E.2d 762 (1998), as support for this argument.  In Roberts, the injured plaintiff received: (1) the $50,000 limit from the at-fault driver's policy, and (2) $246,114.26 in workers' compensation benefits, which was reduced by the $50,000 the plaintiff received from the at-fault driver's policy, for a net workers' compensation benefit of $196,114.26.  Roberts, 291 Ill.

App. 3d at 728, 685 N.E.2d at 372.

Plaintiff relies on the portion of the <u>Roberts</u> decision in which the

court addressed the defendants' argument that they should be allowed to

set off the $50,000 paid by the at-fault driver's insurance by stating as

follows:

> Defendants contend the court erred in finding that
> because the $50,000 paid by Fortune was applied to plaintiff's
> workers' compensation lien, those funds were not entitled to
> set-off by either company.  We find that the court properly
> reasoned a carrier may not claim a set-off which is greater
> than the amount actually received by plaintiff.  Here, plaintiff
> did not actually recover the $50,000 from Fortune.  Instead,
> the $50,000 was applied in part to his attorney's fees and the
> remaining amount to his workers' compensation carrier
> pursuant to its statutory lien. Therefore, we find that the
> court did not err in denying a set-off of the $50,000 paid by
> Fortune.

<u>Roberts</u>, 291 Ill. App. 3d at 730-31, 685 N.E.2d at 374.

<u>Roberts</u>, however, is distinguishable from Plaintiff's case.  The

<u>Roberts</u> court did not discuss any policy language that prevented double

recovery for the same element of loss.  The Policy in this case contained

such language.  Allowing Plaintiff to keep the $103,223.02 in workers'

compensation benefits while also requiring Travelers to pay Plaintiff an

additional $100,000 because the $100,000 from Campbell's insurer went directly to the pay the workers' compensation lien would allow Plaintiff such double recovery.  Under that scenario, Plaintiff would have received the $210,000 that Travelers has already paid, $103,223.02 in workers' compensation benefits, and another $100,000 from Travelers (based on Plaintiff's argument she never actually received the $100,000 from Campbell's insurer that was used to pay off the workers' compensation lien).  Following Plaintiff's reasoning, she would recover $100,000 more than the $310,000 in damages the arbitration panel determined she sustained.  She would essentially be recovering twice for her damages that were included as part of her workers' compensation award.  This would be both against the terms of the Policy and against the public policy behind UIM insurance.

Moreover, Plaintiff's reliance on Roberts is misplaced.  As noted above, the Roberts court rejected the defendants' argument that the trial court erred in denying a set-off of the $50,000 paid by the at-fault driver's insurance carrier and reasoned that a carrier may not claim a set-

off which is greater than the amount actually received by a plaintiff.  In Roberts, the plaintiff was entitled to $246,114.26 in workers' compensation benefits but actually received only $196,114.26 after $50,000 the plaintiff already received from the at-fault party's insurance provider was deducted.  In essence, the $50,000 was set off *before* paying out the plaintiff's workers' compensation benefits.  To allow the defendant to set off another $50,000 would have allowed a double set-off.

Here, the Plaintiff was entitled to receive a total of $310,000 and appears to have actually received $313,223.02, including $210,000 from Travelers and $103,223.02 in workers' compensation benefits. Additionally, $100,000 from Campbell's insurer was used to pay the workers' compensation lien.  Like in Roberts, the set-off in this case was limited to the amount actually received by Plaintiff.  Therefore, Travelers is not claiming a set-off which is greater than the amount actually received by Plaintiff.

In sum, Plaintiff's total damages were determined to be $310,000.

Plaintiff actually received $103,223.02 in workers' compensation benefits. After deducting the $103,223.02 in workers' compensation benefits received from the $310,000 in damages Plaintiff suffered, $206,776.98 in damages remains. Travelers has paid Plaintiff $210,000. Travelers has fulfilled its obligations under the Policy.

Therefore, Travelers' motion for summary judgment on Count I will be granted and Plaintiff's motion for summary judgment with respect to that Count will be denied.

Because the Court has granted summary judgment in favor of Travelers on Plaintiff's breach of insurance contract claim, Plaintiff cannot prevail on Count II–which is based on Travelers' alleged wrongful and vexatious refusal to pay Plaintiff the money that she claimed Travelers still owed her and was the basis of Count I. Therefore, summary judgment will be granted in favor of Travelers, and against Plaintiff, on Count II.

## CONCLUSION

THEREFORE, Travelers' Motion for Summary Judgment (d/e 9) is

GRANTED and Plaintiff's Motion for Summary Judgment (d/e/11) is

DENIED.  Judgment on Counts I and II is entered in favor of Travelers.

All other pending motions are DENIED AS MOOT.  This case is

CLOSED.

IT IS SO ORDERED.

ENTERED: January 8, 2013.

      FOR THE COURT:

                          _____s/ Sue E. Myerscough_____
                               SUE E. MYERSCOUGH
                          UNITED STATES DISTRICT JUDGE